UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE RANDAZZO'S FRUIT &
VEGETABLE, INC.,

    Plaintiff/Appellant,                              Case No. 04-75045

v.                                                    Hon. Gerald E. Rosen

W-W PRODUCE, INC.,

    Defendant/Appellee.
_____/

**OPINION AND ORDER REGARDING APPELLEE'S MOTION
FOR SUMMARY JUDGMENT AFFIRMING REPARATION ORDER**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     March 26, 2007

PRESENT:   Honorable Gerald E. Rosen
                      United States District Judge

## I. INTRODUCTION

In the present suit, Plaintiff/Appellant Joe Randazzo's Fruit & Vegetable, Inc. ("Randazzo") challenges a decision and order issued by a Judicial Officer of the United States Department of Agriculture ("USDA"), directing Randazzo to pay $5,532.80 to Defendant/Appellee W-W Produce, Inc. ("W-W") for a shipment of corn that Randazzo allegedly received from W-W but did not pay for. Randazzo contends here, as it did in the proceedings before the USDA, that it purchased the load of corn in question from a third party, Gibbons, Inc., and not W-W, and that its payment is therefore owed to (and

has been paid to) Gibbons.

Presently before the Court is W-W's motion for an award of summary judgment affirming the USDA's decision in its favor. Randazzo has responded to this motion, and W-W has filed a reply in further support of its motion. Having reviewed the parties' briefs, the accompanying exhibits, the underlying USDA decision, and the remaining materials in the record, the Court finds that the relevant facts and legal arguments are adequately presented in the parties' written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide W-W's motion "on the briefs." See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.[1]

---

[1] In addition to seeking an award of summary judgment in its favor, W-W filed a motion to dismiss at the outset of this action, arguing that the bond posted by Randazzo did not meet the statutory threshold set forth at 7 U.S.C. § 499g(c). Under this provision, an appeal from a USDA reparation order must be supported by "a bond in double the amount of the reparation awarded against the appellant conditioned upon the payment of the judgment entered by the court, plus interest and costs, including a reasonable attorney's fee for the appellee, if the appellee shall prevail." 7 U.S.C. § 499g(c). In this case, Randazzo posted a bond in the amount of $11,665.60 — *i.e.,* double the underlying USDA award of $5,532.80 plus a $300 filing fee — without accounting for the accrual of interest that the USDA also awarded in its order.

Contrary to W-W's assertion in its motion to dismiss, the limited case law on point does not indicate that a bond under § 499g(c) must incorporate the interest that has accrued between the USDA's decision and the filing of an appeal. To the contrary, one of the cases cited by W-W holds that interest accruing after the USDA's decision is ***not*** part of the "reparation awarded" within the meaning of the statute. See Melmarkets, Inc. v. Victor Joseph & Son, Inc., No. 89-CIV-6585, 1990 WL 155594, at *3 (S.D.N.Y. Oct. 11, 1990). Similarly, in a second case cited in W-W's motion, the court merely assumed, without deciding, that "interest unto the date of appeal should be considered part of the award proper," but then found that the somewhat smaller bond posted by the appellant "substantial[ly] compli[ed]" with the statutory requirement. L. Gillarde Co. v. Joseph Martinelli & Co., 168 F.2d 276, 281 (1st Cir.), amended on reh'g, 169 F.2d 60 (1st Cir. 1948). In light of this case law and the language of the underlying statutory provision, the Court finds that the bond posted by Randazzo here is sufficient to allow its appeal

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff/Appellant Joe Randazzo's Fruit & Vegetable, Inc. ("Randazzo) is a Michigan corporation that operates a fruit and vegetable market in Detroit, Michigan. Samuel Randazzo is the company's president and handles all of the purchasing of produce sold at the market. Defendant/Appellee W-W Produce, Inc. ("W-W") is a produce supplier located in Belle Glade, Florida.

On May 23, 2003, Samuel Randazzo determined that the Randazzo market needed corn, and he contacted a number of suppliers and brokers to determine pricing and availability. All are agreed that he purchased 1,008 crates of yellow sweet corn that day, and that this shipment of corn was loaded onto a truck in Brinson, Georgia and delivered to the Randazzo market on or around May 25, 2003.

The dispute in this case concerns the identity of the seller from which Randazzo purchased this load of corn. W-W asserts that it sold this shipment of corn to Randazzo, and it states without contradiction that it sent an invoice to Randazzo by facsimile on the date of this sale, May 23, 2003, reflecting a purchase price of $5,392.80 for the corn and $140.00 for top ice (for a total of $5,532.80). Randazzo, in contrast, contends that it purchased the load of corn at issue from a third party, Gibbons, Inc., which acted as an intermediary between Randazzo and W-W as supplier, and it has produced a May 27, 2003 invoice from Gibbons reflecting a purchase price of $4,989.60 for a shipment of

---

to go forward. Accordingly, W-W's motion to dismiss is denied.

3

corn and $140.00 for top ice (for a total of $5,129.60). Having already paid this latter amount to Gibbons, Randazzo denies any obligation to, in its view, pay two different sellers for a single load of corn.

**A.     The Challenged USDA Decision and Order**

Upon Randazzo's failure to remit the $5,532.80 payment called for under its May 23, 2003 invoice, W-W commenced a reparation proceeding under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.,* seeking an order from the United States Department of Agriculture ("USDA") directing Randazzo to pay for the shipment of corn. In a decision and order dated December 6, 2004, the USDA granted the relief requested by W-W, ordering Randazzo to pay W-W the invoiced amount of $5,532.80 plus interest and a $300.00 filing fee.

In so ruling, the USDA's judicial officer relied principally on Randazzo's failure to produce any admissible evidence of the claimed role of Gibbons, Inc., as an intermediary between Randazzo as purchaser and W-W as supplier. In particular, while it was clear that W-W was the supplier of the corn shipped from Georgia to Randazzo, there was no documentary evidence of any transaction between W-W and Gibbons regarding this shipment of corn. Rather, Randazzo's sole evidence on this point was an unsworn letter from Daniel Gibbons of Gibbons, Inc., stating that his company had contracted with W-W for the load of corn at issue and then sold this corn to Randazzo. The judicial officer found that this unsworn statement lacked evidentiary value, leaving Randazzo without any admissible evidence of an agreement between Gibbons, Inc. and W-W to

provide a load of corn to Randazzo.

In contrast, W-W had produced at least some documentary evidence of an agreement directly with Randazzo to supply the load of corn at issue. First and foremost, W-W produced the invoice it had faxed to Randazzo on the day the corn was ordered, May 23, 2003, along with phone records reflecting the transmission of a fax from W-W to Randazzo that day. In addition, the judicial officer noted the undisputed evidence in the record that W-W provided the information necessary to trigger the shipment of corn from its grower in Georgia to the Randazzo market in Michigan. Accordingly, because W-W indisputably held the initial title to this shipment of corn, and because there was no admissible evidence of a transaction that would have caused this title to pass from W-W to Gibbons, Inc., the judicial officer concluded that Randazzo was obligated to pay W-W for this shipment in accordance with W-W's May 23, 2003 invoice. The judicial officer further opined that any payment that Randazzo might have mistakenly made to Gibbons for this shipment was the result of Randazzo's failure to exercise due diligence or investigate upon receiving W-W's invoice for this same shipment.

**B.     The Evidence Adduced During Discovery in This Action**

Following the USDA's unfavorable decision, Randazzo commenced the present appeal in this Court. As discussed at greater length below, the statutory provision that authorizes such an appeal entitles Randazzo to a "trial de novo" on its challenge to the USDA's ruling, with the exception that the USDA's decision and attendant findings of fact are treated as "prima-facie evidence of the facts therein stated." 7 U.S.C. § 499g(c).

In anticipation of this potential "trial de novo," the parties have engaged in discovery in this case, resulting in a record more extensive than the limited documentation and competing sworn statements presented for consideration by the USDA's judicial officer.[2]

Most significantly, the record includes the deposition testimony of Daniel Gibbons of Gibbons, Inc. In this testimony, as in his letter submitted during the USDA reparation proceedings, Gibbons stated that he, through his company, had purchased the load of corn at issue from W-W and taken title to this produce, had identified Randazzo as a customer for this corn, and then had provided Randazzo with the information necessary to pick up the load from W-W's grower in Georgia and deliver it to the Randazzo market in Michigan. (See Randazzo's Response, Ex. 2, Gibbons Dep. at 14, 17-20.) More specifically, Gibbons testified that he spoke with a long-time acquaintance who was

---

[2] In its response to W-W's summary judgment motion, Randazzo seemingly suggests that the proceedings before the USDA's judicial officer were deficient for lack of any deposition transcripts, the taking of any testimony, or the cross-examination of witnesses. (See Randazzo's Response Br. at 13.) Randazzo further asserts, without evidentiary support, that it was "prevented from filing any affirmative defenses, counter claims or cross claims." (Id. at 10.)

This latter claim seemingly is belied by the USDA decision itself, which explicitly refers to and addresses "a number of affirmative defenses" raised by Randazzo. (USDA 12/6/2004 Decision at 3.) Moreover, the applicable USDA regulations governing reparation proceedings expressly permit the filing of a counterclaim along with an answer to a complaint, see 7 C.F.R. § 47.8(a), and Randazzo has not provided any support for its contention that it was precluded from doing so. Similarly, to extent that Randazzo wished to present sworn deposition testimony to the USDA's judicial officer, or to have W-W's complaint addressed at an oral hearing rather than decided upon written submissions alone, the pertinent regulations permit such requests to be made, with the judicial officer then deciding whether such additional procedures are warranted in a particular case. See 7 C.F.R. § 47.16(a) (setting forth procedure for requesting leave to take depositions); 7 C.F.R. §§ 47.15(a)(1), 47.20(b)(1) (authorizing parties to request an oral hearing in cases where the claim for damages does not exceed $30,000). There is no indication that Randazzo made any such requests during the proceedings before the USDA.

employed as a salesperson for W-W, Billy Mackey, and that he and Mackey reached a verbal agreement for W-W to sell and Gibbons to buy the load of corn at issue, without either of them knowing at the time who the end purchaser of the corn might be. (See id. at 12-14, 17-18, 26-28.)[3]

Although Gibbons testified that he typically would have received some sort of written confirmation of his oral agreement with W-W — consisting, for example, of a fax from W-W confirming that the corn had been loaded on a truck, (see id. at 20, 26, 29) — he failed to produce any such documentation at his deposition, nor do any such materials appear in the record. In addition, Gibbons stated that he never received a bill from W-W for the load of corn at issue here. Rather, Gibbons asserted that he first learned of a problem with the transaction when Randazzo informed him that W-W was seeking payment for the very same load of corn that Randazzo had purchased from Gibbons. Having already been paid by Randazzo, Gibbons agreed to issue a check to W-W, but was told that W-W was insisting on collecting from Randazzo rather than Gibbons. (See id. at 22-23.)[4]

The record also includes the deposition testimony of Randazzo's president, Samuel

---

[3]Mackey evidently was terminated from his position at W-W at some point after the transaction at issue here, and has since passed away.

[4]According to the sworn statement submitted by W-W in the USDA reparation proceeding, Randazzo ultimately did forward to W-W a check issued by Gibbons, but W-W determined upon investigation that Gibbons had insufficient funds in its bank account to cover this check Accordingly, W-W returned the check to Randazzo and again demanded payment directly from the market. (See USDA 12/6/2004 Decision at 6.)

Randazzo, and its accounts payable clerk, Rhonda Ulmer.  Mr. Randazzo testified that on May 23, 2003, after determining that his market needed some corn, he called a number of shippers and brokers and found that Gibbons was offering the best price.  (See Randazzo's Response, Ex. 1, Randazzo Dep. at 8.)  He then wrote out a purchase slip, reflecting a price between $4.85 and $4.95 per crate, and forwarded this document to another Randazzo employee, Mark Galli, who was responsible for arranging delivery of the corn.  (See id. at 8-12; see also Randazzo's Response, Ex. 4, Purchase Slip.)  When this load of corn arrived at Randazzo's dock, the accompanying bill of lading was matched with Mr. Randazzo's initial purchase slip and a fax confirmation subsequently received from Gibbons, and a check was issued to Gibbons in the amount of $5,129.60, reflecting a price of $4.95 per crate plus $140 for top ice.  (See Randazzo Dep. at 37-43; see also Randazzo's Response, Ex. 3, Ulmer Dep., Ex. 1, Bill of Lading; Randazzo's Response, Ex. 5, Gibbons Invoice.)[5]

    Mr. Randazzo did not deny that his market might have received a faxed invoice from W-W on May 23, 2003, reflecting an apparent purchase of a load of corn from W-W at a price of $5.35 per crate.  In his view, however, any such invoice would have been ignored as mistakenly received, since it could not have been matched with any purchase slip from him reflecting such a transaction with W-W.  (See Randazzo Dep. at 22-23, 37,

---

[5]Ms. Ulmer's deposition testimony is essentially the same as Mr. Randazzo's with regard to the paper trail for this transaction and the market's usual procedures for ordering and payment. Thus, her testimony need not be recounted in any detail here.

43-44.) Mr. Randazzo further testified that he did not know at the time that W-W was the supplier of the corn he had purchased from Gibbons, and that he learned of this only when a W-W representative subsequently called him and claimed that Randazzo owed W-W for a load of corn. (See id. at 16-17, 34.) Mr. Randazzo responded that his market had purchased the corn in question from Gibbons, not W-W, but he nonetheless offered to help W-W in its effort, and he forwarded a check from Gibbons to W-W in an unsuccessful attempt to resolve this dispute. (See id. at 20-21.)

Dissatisfied with this outcome, W-W commenced a reparation proceeding before the USDA, and secured a decision and order directing Randazzo to pay W-W for the load of corn at issue. Through the present suit, Randazzo seeks to overturn the USDA's decision and order.

### III.  ANALYSIS

**A.     The Standards Governing W-W's Motion**

Through the present motion, W-W seeks summary judgment in its favor on Randazzo's challenge to the USDA's decision and order directing Randazzo to pay $5,532.80 plus interest and costs to W-W. Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The familiar principles governing the resolution of summary judgment motions are

affected somewhat by the statutory provision governing appeals of USDA reparation orders. As noted earlier, this Court must conduct a "trial de novo" on Randazzo's challenge to the USDA's decision, "except that the findings of fact and order or orders of the Secretary shall be prima-facie evidence of the facts therein stated." 7 U.S.C. § 499g(c). Accordingly, as the courts have explained, the USDA's findings are "conclusive unless effectively rebutted." Frito-Lay, Inc. v. Willoughby, 863 F.2d 1029, 1033 (D.C. Cir. 1988); see also Genecco Produce, Inc. v. Sandia Depot, Inc., 386 F. Supp.2d 165, 170 (W.D.N.Y. 2005).

In the specific context of a summary judgment motion, then, the prevailing party in the reparation proceeding — in this case, W-W — meets its initial burden as movant by citing "an absence of evidence to rebut the prima facie case presented by the [USDA's] order." Frito-Lay, 863 F.2d at 1032. This, in turn, imposes a burden of production upon the non-moving party, Randazzo, to "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Frito-Lay, 863 F.2d at 1033 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)) (internal quotation marks and additional citation omitted). Unless Randazzo identifies evidence which, if credited by the trier of fact, would rebut the prima facie case established through the USDA's decision, W-W is entitled to summary judgment in its favor — namely, a determination as a matter of law that Randazzo's challenge to the USDA's decision cannot succeed. See Frito-Lay, 863 F.2d at 1033; B.T. Produce Co. v. Robert A. Johnson Sales, Inc., 354 F.

Supp.2d 284, 288-89 (S.D.N.Y. 2004).  With these standards in mind, the Court turns to the present motion.

**B.     Randazzo Has Identified Issues of Fact as to Whether It Purchased the Load of Corn at Issue from Gibbons Rather Than W-W.**

As discussed, the parties' dispute in this case concerns the identity of the seller of the load of corn ordered by Randazzo on May 23, 2003 and delivered to the market within a day or two thereafter.  In the decision and order now on appeal, the USDA determined that Randazzo had purchased this corn from W-W, and not from Gibbons as Randazzo had contended in its submissions in the reparation proceeding.  Through its present motion, W-W argues that Randazzo has failed to produce evidence to rebut the USDA's findings on this point.  The Court cannot agree.

At first blush, the present motion appears to be easily resolved.  The lynchpin of the USDA's decision, after all, was the absence of any "indication in the record of any contractual relationship between [W-W] and Gibbons for the subject trucklot of corn." (USDA 12/6/2004 Decision at 9.)  W-W denied the existence of any such agreement, of course, and Randazzo was unable to present the sworn testimony or statement of anyone with personal knowledge to the contrary.  Rather, the sole documentation submitted by Randazzo in support of a claimed contractual relationship between W-W and Gibbons was a letter from Daniel Gibbons attesting to such an agreement, and the USDA's judicial officer discounted this letter as "not sworn" and hence lacking "any evidentiary value." (Id.)  Consequently, because it was undisputed that W-W held the initial title to the load

of corn at issue, and because there was no evidence that title passed to an intermediary — whether Gibbons or some other third party — at any time during the shipment of the corn from W-W's grower in Georgia to the Randazzo market in Michigan, the USDA's judicial officer concluded that W-W had "sustained its burden to prove that [Randazzo] purchased and accepted the subject trucklot of corn at a contract price of $5,532.80," (id. at 10) — *i.e.,* the price set forth on W-W's invoice.

The evidentiary deficiency noted by the USDA's judicial officer, however, has been cured in the record presented for this Court's consideration. In particular, Randazzo has produced the sworn deposition testimony of Daniel Gibbons, in which he confirms the thrust of his earlier letter — namely, that his company, Gibbons, Inc., entered into an oral agreement with W-W to purchase the load of corn at issue, and then sold this corn to Randazzo. Accepting this testimony as true, as the Court must at the present juncture, Randazzo seemingly has rebutted the prima facie case established through the USDA's decision and order, and has offered proof which, if credited by the trier of fact, demonstrates the passage of title from W-W to Gibbons.

Nonetheless, W-W insists that the deposition testimony of Daniel Gibbons, standing alone, is insufficient to establish the requisite agreement between W-W and Gibbons and passage of title from the former to the latter. As an initial matter, W-W points to Randazzo's failure to identify any documentary support for Gibbons's claim of an oral agreement with W-W. While Gibbons testified that he typically would have received some sort of written confirmation of this agreement, he failed to produce any

such documentation at his deposition, nor do any such materials appear in the record. Next, to the extent that Randazzo has produced some documentary support for its claimed purchase of a load of corn from Gibbons at around the same time as the transaction at issue here, W-W argues that these materials appear to evidence Randazzo's purchase of a *different* load of corn, and not the load supplied by W-W.

Neither of W-W's challenges, however, would permit this Court to reject *as a matter of law* the account offered at Daniel Gibbons's deposition. First, while Gibbons's testimony is undeniably weakened by his failure to produce the documentation that, by his own admission, should have accompanied and memorialized his oral agreement with W-W, this Court is unaware of any requirement that a witness's sworn testimony must be supported by documentary evidence in order to be credited.[6] Rather, this lack of documentary support affects only the weight of Gibbons's testimony, and this is a matter that must be left for the trier of fact to determine.

Similarly, any questions that might arise from Randazzo's documentary evidence of a transaction with Gibbons would merely permit, but not require, a trier of fact to discount the direct testimony of Samuel Randazzo and Daniel Gibbons, based on their own personal knowledge, that Randazzo purchased the load of corn at issue here from

---

[6] Along the same lines, W-W observes in its motion that Randazzo will be unable to offer the testimony of Billy Mackey — who, as noted earlier, was employed by W-W at the time of the transaction at issue here, but is now deceased — to corroborate Gibbons's claim that his oral agreement with W-W arose during a telephone call with Mackey. Again, however, a trier of fact remains free to credit the testimony of a witness despite the absence of corroborating testimony from another witness.

Gibbons rather than W-W. In W-W's view, the documents produced by Randazzo tend to undermine this deposition testimony in two respects. First, W-W notes that the invoice issued by Gibbons to Randazzo refers to a shipment of corn that was loaded on May 24, 2003 and delivered on May 27, 2003. (See W-W's Motion, Ex. C.) Yet, W-W construes other evidence in the record as indicating that the load of corn at issue here was shipped on May 23, 2003 and delivered on May 25, 2003.[7] It follows, in W-W's view, that the invoice issued by Gibbons must refer to a *different* shipment of corn that was loaded and delivered shortly *after* the corn at issue here.

Next, W-W points to an apparent discrepancy in the prices quoted in the two invoices separately issued to Randazzo by W-W and Gibbons. Specifically, the Gibbons invoice lists a price of $4.95 per crate of corn, while the W-W invoice billed Randazzo at a rate of $5.35 per crate. W-W reasons, and the USDA's judicial officer agreed, (see USDA 12/6/2004 Decision at 9), that it would make no sense for Gibbons to act as an intermediary between W-W and Randazzo, and yet charge Randazzo 40 cents per crate *less* than the price charged by the supplier, W-W, from which Gibbons purportedly obtained the load of corn at issue here. Rather, the logical conclusion, in W-W's view, is that the Gibbons and W-W invoices refer to two different shipments of corn.

---

[7]It is not clear how W-W arrives at a delivery date of May 25, 2003. The collection of documents cited in support of this proposition includes (i) W-W's invoice to Randazzo, which reflects a "[d]eliver[y]" date of May 23, 2003; (ii) a bill of lading dated May 23, 2003, which lacks any reference to the dates that the truck was loaded or arrived at its destination; and (iii) an invoice from the trucking company to Randazzo, which lists May 23, 2003 as both the ship date and the delivery date. (See W-W's Motion, Ex. D.)

Once again, however, these arguments go only to the weight that a trier of fact should give to the deposition testimony of Samuel Randazzo and Daniel Gibbons. To the extent that the accounts of Mr. Randazzo and Mr. Gibbons deviate from the corresponding documentary evidence of the transactions about which they testified, W-W has not explained why it would not be possible for a trier of fact to favor the former over the latter. Documents, after all, can be mistaken too — they can be drafted, for example, by someone who lacks personal knowledge of the statements they contain, or by someone who is simply wrong about the dates on which events occurred. Indeed, while W-W is quite prepared to discount the testimony of Daniel Gibbons, it seemingly has no doubt about the accuracy of the dates shown on *Gibbons's own invoice* as the shipment and delivery dates of a particular load of corn. Accordingly, while W-W surely is entitled to impeach Randazzo and Gibbons with any purportedly inconsistent statements found in their records, it must be left to the trier of fact to resolve any such inconsistencies.

More fundamentally, at least some of the purported "inconsistencies" identified by W-W rest upon the premise that W-W's own documentation is correct. With regard to the discrepancy in the prices shown on the W-W and Gibbons invoices, for example, the price charged by Gibbons is economically irrationally *only if* one assumes that the price stated in the W-W invoice accurately reflects the amount that W-W actually charged for a crate of corn at the time. Yet, accepting as true, for the moment, Samuel Randazzo's testimony that the purchase reflected in W-W's invoice *did not occur*, this Court surely cannot safely assume, at the present juncture, that the price quoted in this wholly spurious

invoice is an accurate reflection of W-W's pricing at the time.[8]

Thus, in order to discount Randazzo's evidence as involving a different sale of corn, rather than the sale of the corn at issue here with Gibbons serving as intermediary, this Court would have to credit, to some extent at least, W-W's contrary evidence depicting a direct transaction with Randazzo. W-W has not explained why its own documentation of the transaction at issue here should entitled to the status of immutable truth, particularly where none of these documents, on its face, evidences an agreement between W-W and Randazzo under the terms claimed by W-W. While the USDA chose to credit W-W's evidence, this was primarily due to the absence of contrary evidence. As explained, this evidentiary deficiency has been cured in the record before this Court. Under these circumstances, Randazzo has overcome the presumption that the USDA's findings are correct, and has established its entitlement to the "trial de novo" called for under 7 U.S.C. § 499g(c).

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant/Appellee's motion for summary judgment is DENIED.  IT IS FURTHER ORDERED that

---

[8]Indeed, such an assumption would be particularly problematic here, where the parties disagree as to the very nature of the transaction that occurred here. W-W asserts that it sold directly to the Randazzo market, while Randazzo contends that it purchased through an intermediary. Even assuming that W-W's invoice reflects the price it would have charged for a direct sale to a market, it does not necessarily follow that W-W would have charged the same price to an intermediary that planned to turn around and resell to a retail market.

Defendant/Appellee's motion to dismiss appeal also is DENIED.


                                                  s/Gerald E. Rosen
                                                  Gerald E. Rosen
                                                  United States District Judge

Dated:  March 26, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 26, 2007, by electronic and/or ordinary mail.

                                                  s/LaShawn R. Saulsberry
                                                  Case Manager